# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOSH CARMONA A/K/A CRISCO KID,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:17-cv-3110** |
| | § | |
| **CUMULUS MEDIA, INC. A/K/A,** | § | |
| **CUMULUS RADIO CORP., INC. AND** | § | |
| **DUSTIN "KROSS" KRAMMERER,** | § | |
| | § | |
| **Defendant.** | § | |

## INDEX TO DEFENDANTS' NOTICE OF REMOVAL

| EXHIBIT | DATE OF DOCUMENT | DOCUMENT |
|---|---|---|
| 1 | November 9, 2017 | State Court Docket Sheet |
| 2 | October 6, 2017 | Plaintiff's Original Petition |
| 3 | October 6, 2017 | Civil Process Request Form |
| 4 | October 16, 2017 | Citation to Cumulus Media, Inc. a/k/a Cumulus Radio Corp., Inc. |
| 5 | October 12, 2017 | Citation to Dustin "Kross" Krammerer |
| 6 | October 17, 2017 | Return of Service for Citation to Dustin "Kross" Krammerer |
| 7 | October 25, 2017 | Return of Service for Citation to Cumulus Media, Inc. a/k/a Cumulus Radio Corp., Inc. |

31907807.1

# EXHIBIT 1

Details

## Case Information

DC-17-13908 | Josh Carmona vs. Dustin "Kross" Krammerer et al

Case Number
DC-17-13908

Court
298th District Court

Judicial Officer
TOBOLOWSKY,
EMILY

File Date
10/06/2017

Case Type
EMPLOYMENT

Case Status
OPEN

## Party

PLAINTIFF
Carmona, Josh

Active Attorneys▾
Lead Attorney
FULTON, KEVIN H
Retained

Work Phone
281-817-5464

Fax Phone
832-201-8847

DEFENDANT
Krammerer, Dustin "Kross"

Address
3090 OLIVE STREET SUITE 400
DALLAS TX 75219

DEFENDANT
CUMULUS MEDIA, INC.

Address
3280 PEACHTREE ROAD SUITE 2300
ATLANTA GA 30305

Details

## Events and Hearings

10/06/2017 NEW CASE FILED (OCA) - CIVIL

10/06/2017 ORIGINAL PETITION ▼

scan0027.pdf

10/06/2017 ISSUE CITATION

10/06/2017 ISSUE CITATION COMM OF INS OR SOS ▼

ISSUE CITATION COMM OF INS OR SOS

Comment
9214 8901 0661 5400 0113 7567 91

10/12/2017 CITATION ISSUED ▼

DC17-13908 DUSTIN.pdf

10/12/2017 CITATION ▼

Anticipated Server
ESERVE

Anticipated Method
Actual Server
PRIVATE PROCESS SERVER

Returned
10/18/2017
Comment
ESERVE 20037528 kfulton@fultonlg.com /TJ

10/16/2017 CITATION SOS/COI/COH/HAG ▼

Anticipated Server
CERTIFIED MAIL

Anticipated Method
Actual Server
CERTIFIED MAIL

Returned
10/20/2017
Comment
SOS-CERT MAIL / BH

10/18/2017 RETURN OF SERVICE ▼

CIT EXEC 10/17/2017 DUSTIN KRAMMERER

Comment

Details

CIT EXEC 10/17/2017 DUSTIN KRAMMERER

10/25/2017 RETURN OF SERVICE ▾

CUMULUS

Comment
CITATION EXECUTED CUMULUS MEDIA, INC

## Financial

Carmona, Josh

| | Total Financial Assessment | | | $476.00 |
| Total Payments and Credits | | | | $476.00 |

| 10/10/2017 | Transaction Assessment | | | $476.00 |
|---|---|---|---|---|
| 10/10/2017 | CREDIT CARD - TEXFILE (DC) | Receipt # 66350- 2017- DCLK | Carmona, Josh | ($476.00) |

## Documents

scan0027.pdf

DC17-13908 DUSTIN.pdf

ISSUE CITATION COMM OF INS OR SOS

CIT EXEC 10/17/2017 DUSTIN KRAMMERER

CUMULUS

# EXHIBIT 2

1 CT-E-SERVE

1 SOS-CERT-MAIL

Case 3:17-cv-03110-M   Document 1-1   Filed 11/10/17   Page 8 of 67   PageID 20

FILED
DALLAS COUNTY
10/6/2017 6:07 PM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

DC-17-13908

NO. _____

| | | |
|---|---|---|
| **JOSH CARMONA AKA CRISCO KID** | § | **IN THE DISTRICT COURT** |
| **Plaintiff** | § | |
| | § | |
| | § | M[-298TH ____ **JUDICIAL DISTRICT** |
| | § | |
| **CUMULUS MEDIA, INC. AKA** | § | |
| **CUMULUS RADIO CORP. INC. AND** | § | |
| **DUSTIN "KROSS" KRAMMERER** | § | |
| **Defendants** | § | **DALLAS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Josh Carmona AKA Crisco Kid, hereinafter called Plaintiff, complaining of and about Cumulus Media, Inc. AKA Cumulus Radio Corp. and Dustin "Kross" Krammerer, hereinafter called Defendants, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.      Plaintiff intends that discovery be conducted under Discovery Level 2

### PARTIES AND SERVICE

2.      Plaintiff Josh Carmona AKA Crisco Kid, is a citizen of the United States and the State of Texas and resides in Dallas County, Texas.

3.      Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp. is a corporation with a principal address of 3280 Peachtree Road, Suite 2300, Atlanta, GA 30305 and may be served through the Texas Secretary of State's office.

SOS

1

4.      Defendant, Dustin "Kross" Krammerer is an individual Texas resident, and may be
served at his employment located at 3090 Olive Street, Suite 400, Dallas, Texas 75219 or
wherever he may be found.

E-SERVE

## JURISDICTION AND VENUE

5.      The subject matter in controversy is within the jurisdiction limits of this court.

6.      This Court has personal jurisdiction herein because Defendants are residents of
this state.

7.      Venue in Dallas County is proper in this cause pursuant to Section 15.002(a)(1) of
the Texas Civil Practice and Remedies Code because all or a substantial part of the events or
omissions giving rise to this lawsuit occurred in this county.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      Plaintiff received his Notice of Right to Sue from the Equal Employment
Opportunity Commission ("EEOC") on or about July 8, 2017. A copy of the Plaintiff's EEOC
Notice of Right to Sue is attached hereto as Exhibit 1, and incorporated herein by reference.

## FACTS

9.      Plaintiff has been an On-Air Personality at Cumulus Media, Inc. AKA
Cumulus Radio Corp. since March 2, 2015, where he served as an exemplary employee
until April 14, 2016, when he was wrongfully terminated by Defendants.

10.     Plaintiff did not experience any discrimination until January 4, 2016, when he was
denied a promotion to the Program Director position. Plaintiff applied for the position on
November 12, 2015, and was interviewed on two separate occasions. Plaintiff was the only
Hispanic who applied for the position and he was the most qualified for the job. However,

2

Defendants went with a Caucasian male, Dustin "Kross" Krammerer who was not from within the company and less qualified than Plaintiff.

11.     Plaintiff was told by the General Manger of Cumulus Media, Inc. AKA Cumulus Radio Corp., Dan Bennett that he did not think Plaintiff was ready for the position and that Plaintiff would need training on how to operate Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp.'s system. Plaintiff has been an employee with Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp. for ten months, whereas Mr. Kross had previously worked with CBS and was not programmed in higher markets than Plaintiff. Mr. Bennett claims that Plaintiff would need more training on how to operate Defendant's system when Plaintiff had already been introduced to the system during his ten months of employment with Defendant. Plaintiff was confused because Mr. Kross did not have any experience with Defendants' system and would require the same training that Plaintiff would have had to undergo had he received the position.

12.     Since Mr. Kross began his employment with Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp., he has made racially inappropriate comments to certain staff members, such as asking them to "target white females", to not sound too "ethnic/urban" and to leave out certain phrases like "taco Tuesday". Defendants have discriminated against other Hispanic employees by not promoting them, demoting them and putting them in uncomfortable situations by the racist comments and attempts to make the Hispanic employees feel inferior compared to the other Caucasian employees.

13.     On or about April 14, 2016, a disciplinary meeting was held between Plaintiff, Mr. Kross and Mr. Bennett to discuss some behavioral issues that the General Manager and Program Director felt needed to be addressed to Plaintiff. Plaintiff was written up for four different

3

reasons. The first reason was due to a fabricated complaint on a song launch. The second reason was due to the way that Plaintiff introduced a song. Defendants did not feel that it was introduced the way that Plaintiff was instructed to introduce the song. The third reason was due to Plaintiff being late for an event after having to assist a fellow staff member in getting her crutches because she had broken her foot and was unable to walk. Plaintiff was instructed to be there at 3:00 PM but was going to be late due to unforeseen traffic. Plaintiff explained to Defendants that he was assisting a fellow staff member and that he would be a little late due to traffic. Finally, the fourth reason was due to Plaintiff announcing his birthday on the radio and jokingly commenting that anyone is welcome to bring him food if they would like. Defendants stated that comment was inappropriate and unprofessional.

14.     Plaintiff had not received a write up since around 1999, possibly 2000. In fact, Defendants stated during the disciplinary meeting that Plaintiff has "never been a problem". Plaintiff felt as if the issues being discussed could have been verbally given to him, but instead Defendants were nitpicking every action and writing him up to leave a paper trail for future termination of his employment. Due to the reasons described herein, Plaintiff believes he was being discriminated against and targeted by Defendants due to his race. Plaintiff was shocked by the way that he was treated in this meeting, to the point where it made him physically sick. Due to the nausea, created from the hostile work environment, Plaintiff informed Defendants that he would be taking one of his sick days and he left for the day, with the intention of returning to work the following day, Friday, April 15, 2016.

15.     Not even ten minutes after the disciplinary meeting, Plaintiff attempted to login to his work emails with the intention of immediately contacting the Human Resources Director to complain of the discrimination he had just experienced; however, Defendants had already locked

4

Plaintiff out of his emails. Shortly after, Plaintiff received a phone call from Vicki Ochoa, another On-Air Personality at Cumulus Media, Inc. AKA Cumulus Radio Corp. and was informed that she was instructed by Mr. Kross to cover Plaintiff's shifts on Thursday and Friday. At that time, Ms. Ochoa had stated Mr. Kross expressed to her that Plaintiff was causing a scene and that the police had to be contacted.

16.     Before Plaintiff left for the day, he removed his water cooler from the studio as instructed by Mr. Kross earlier that morning. After removing the cooler and returning to the studio, Plaintiff noticed that his key was not working. To Plaintiff's surprise, when he went to the front of the building, he had been locked out of the entire office. He spoke with Mr. Bennett who asked him why he was making threats, as Mr. Kross had stated to him that Plaintiff was making threats. Plaintiff was shocked at these allegations and denied that he made any threats.

17.     Plaintiff needed to retrieve his backpack and his scooter, and considering Mr. Kross had lied about him making threats, Plaintiff was not comfortable entering the building alone. Plaintiff decided it would be best to contact the police to assist him, which he did.

18.     About an hour later, the police arrived. Plaintiff asked one of the officers to retrieve two items that Plaintiff needed at that moment, his backpack and his scooter. The police officer who went to retrieve his belongings came back with not only his scooter and backpack, but a box of all of his belongings in it. The police officer informed Plaintiff that it does not appear he is welcome here and he should not return on property.

19.     On Monday, April 18, 2016, Plaintiff sent Tom Dailey, the Business Manager at Cumulus Media, Inc. AKA Cumulus Radio Corp. an email to inquire as to his employment status, given the fact that he had not heard from the company since Thursday and the police officer who retrieved his belongings stated that it did not appear he was welcomed there.

Cumulus Media, Inc. AKA Cumulus Radio Corp. responded by stating Plaintiff had been terminated as a result of his failure to show up for his shift on Friday. Plaintiff responded with a few questions for clarity on why he was terminated, Mr. Dailey responded with "What is the point of all this? Do you want your job back? You made it pretty clear last week that you were not happy here and, frankly, we're not interested in having you back given your recent behavior." A copy of the email strand between Plaintiff and Mr. Dailey regarding his employment status is attached hereto as Exhibit 2.

## RACE DISCRIMINATION PURSUANT TO
## TEXAS LABOR CODE § 21.051(1) AND (2)

20.    Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

21.    Plaintiff is an employee within the meaning of the Texas Labor Code § 21.002(7) and belongs to a protected class under the statute, namely he is Hispanic.

22.    Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp. is an employer within the meaning of the Texas Labor Code § 21.002(8).

23.    Defendants intentionally engaged in unlawful employment practices involving Plaintiff because he is Hispanic.

24.    Defendants engaged in discrimination against Plaintiff by disparately treating him and taking adverse personnel actions against him because he is Hispanic, which affected Plaintiff's terms, conditions and privileges of employment in violation of Texas Labor Code § 21.051(1) and (2).

25.     Because Plaintiff is Hispanic, Defendants subjected him to a hostile work environment. Accordingly, Plaintiff alleges that Defendants' discriminatory behavior would reasonably be perceived and was perceived, as hostile or abusive.

26.     Defendants have discriminated against Plaintiff in connection with the terms, conditions, or privileges of employment because of Plaintiff's race. Additionally, Defendants have limited, segregated, or classified Plaintiff in such a manner that deprives Plaintiff of employment opportunities or adversely affects his status because of his race. Defendants' actions regarding Plaintiff's race are in violation of the Texas Labor Code § 21.051(1) and (2).

27.     Plaintiff was wrongfully terminated from his employment with Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp. because of his race, and in retaliation for complaining of discrimination.

28.     As a result of all of Defendants' violations of the Texas Labor Code, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress. Thus, Plaintiff is entitled to reimbursement of wages, compensatory damages, reasonable attorney's fees, costs, and disbursements incurred in this action.

## RETALIATION BY CUMULUS MEDIA, INC.
## AKA CUMULUS RADIO CORP. AND
## DUSTIN "KROSS" KRAMMERER

29.     Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

30.     Defendants engaged in a prohibited activity in violation of the Texas Labor Code § 21.051(1) and (2), Texas Labor Code § 21.055, and Texas Labor Code § 21.056, when via its agents, Defendants locked Plaintiff out of the building and out of his work email on Thursday,

7

returned all of Plaintiff's belongings to him when he only requested two items, and ultimately, discharged Plaintiff due to his failure to return to work on Friday.

31.     Defendants' discriminatory practices described above have denied the Plaintiff promotional opportunities, compensating, and continued employment to which he was otherwise entitled. This conduct has resulted in emotional distress and other harm for which entitles him to compensation.

32.     Defendants have undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under the Texas Labor Code § 21.051 (1) and (2), Texas Labor Code § 21.055, and Texas Labor Code § 21.056.

33.     These employment practices violated the Texas Labor Code § 21.051 (1) and (2), Texas Labor Code § 21.055, and Texas Labor Code § 21.056

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

34.     Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

35.     The Defendants' acts and conduct alleged above were extreme and outrageous, were intentionally or recklessly done by Defendants, and resulted in severe emotional distress to Plaintiff, in violation of the laws of the State of Texas.

36.     The Defendants' actions were willful and malicious and made with reckless indifference to the Plaintiff's rights, and no alternative cause of action would provide a remedy for the severe emotional distress caused by Defendants.

### AGENCY

37.     Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

8

38.     If it is shown that at and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp., Inc., those acts occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

39.     Said Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## BREACH OF CONTRACT

40.     Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

41.     On March 2, 2015, Plaintiff and Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp. entered into an Employment Agreement ("Contract") with the terms ending on February 28, 2017, and automatically extending from year to year unless either Defendant or Plaintiff gives written notice of non-renewal. A copy of the the Contract is attached hereto as Exhibit 3, and incorporated herein by reference.

42.     Per Paragraph 5.2 of the Contract, Defendant may terminate the Contract at any time upon twelve (12) weeks' notice to Plaintiff.

43.     Defendant breached Paragraph 5.2 of the Contract when it terminated Plaintiff's employment alleging it was due to his failure to return to work. Defendant did not notify Plaintiff that he was terminated until Monday, after Plaintiff sent an email to the Business Manager of Cumulus Media, Inc. AKA Cumulus Radio Corp. to inquire as to his employment status with Defendant.

9

44.     Plaintiff sustained damages as a result of Defendant's breach of the Contract.

## TORTIOUS INTERFERENCE WITH A CONTRACT

45.     Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

46.     As stated above, a valid contract exists between Plaintiff and Defendant Cumulus Media, Inc. AKA Cumulus Radio Corp.

47.     Defendant, Dustin "Kross" Krammerer had knowledge of the Contract between Plaintiff and Defendant.

48.     Defendant intentionally interfered with the Contract by portraying Plaintiff as being out of control and temperamental to the General Manager of Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp.

49.     Defendant's interference was improper.

50.     Plaintiff sustained damages as a result of Defendant's interference with the Contract between Plaintiff and Defendant.

## TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONS

51.     Plaintiff reasserts and incorporates by reference all of the above-numbered paragraphs.

52.     As stated above, a valid contract exists between Plaintiff and Defendant Cumulus Media, Inc. AKA Cumulus Radio Corp.

53.     Defendant, Dustin "Kross" Krammerer had knowledge of the Contract between Plaintiff and Defendant.

54.     Defendant intentionally coerced one of the parties to breach a contract when he falsely accused Plaintiff of making threats and causing a scene after the disciplinary meeting on

Thursday. Defendant even went as far as alleging he had to contact the police due to Plaintiff's behavior. Defendant's actions portrayed Plaintiff as being out of control and temperamental to the General Manager of Defendant, Cumulus Media, Inc. AKA Cumulus Radio Corp.

55.     Defendant was not authorized to interfere with the business relationship between Plaintiff and Defendant.

56.     Plaintiff sustained damages as a result of Defendant's interference with the business relationship between Plaintiff and Defendant.

## DAMAGES

57.     Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendants described hereinabove:

a.   Loss of benefits;

b.   All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

c.   Back pay from the date that Plaintiff was wrongfully terminated and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

d.   All reasonable and necessary costs incurred in pursuit of this suit;

e.   Expert fees as the Court deems appropriate;

f.   Front pay in an amount the Court deems equitable and just to make Plaintiff whole; and

g.   Interest

## EXEMPLARY DAMAGES

58.     Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed with malice or reckless indifference to the protected

11

rights of the Plaintiff. In order to punish said Defendants for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Josh Carmona AKA Crisco Kid, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

The Fulton Law Group, PLLC

By: _____

Kevin Fulton
Texas Bar No. 24059787
E-Mail: kfulton@fultonlg.com
2855 Mangum Road Suite 413
HOUSTON, TX 77092
Tel. (713) 677.0109
Fax. (832) 201.8847
Attorney for Plaintiff
Josh Carmona AKA
Crisco Kid

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

12

EEOC Form 161-B (11/16)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:   Joshua B. Carmona
      2323 North Field Street
      Apt 1112
      Dallas, TX 75201

From:   Dallas District Office
        207 S. Houston St.
        3rd Floor
        Dallas, TX 75202

☐   On behalf of person(s) aggrieved whose identity is
    CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2016-01964 | Belinda F. McCallister, Acting District Director | (214) 253-2850 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

Belinda F. McCallister,
Acting District Director

7/10/17

*(Date Mailed)*

cc:   Ryanne Saucier
      Corporate Counsel
      CUMULUS MEDIA
      3280 Peachtree Road
      Suite 2300
      Atlanta, GA 30305

Kevin Fulton, Attorney
THE FULTON LAW GROUP P L L C
2855 Mangum Rd., Ste. 413
Houston, TX 77092



PLAINTIFF'S
EXHIBIT

1

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** — **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *mailed* **to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** — **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit *before 7/1/10* – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** — **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** — **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

# Fwd: Re: Employment Status and Meeting Request - Joshua Carmona

Crisco Kidd [criscoradio@gmail.com]

Sent: 10/5/2017 2:18 PM

To: chelsea@fultonlg.com

---

---------- Forwarded message ----------
From: "Crisco Kidd" <criscoradio@gmail.com>
Date: Apr 20, 2016 4:41 PM
Subject: Re: Employment Status and Meeting Request - Joshua Carmona
To: "Tom Dailey" <Tom.Dailey@cumulus.com>
Cc:

Tom,

Let me start by saying that I am shocked at your response. I now see by your response that my treatment was not an isolated event by my supervisor but, the culture of the company. As an employee who was recruited to move to Dallas from Los Angeles and that has worked hard to contribute to the success of the new Hot93.3 and Cumulus, you have to forgive me for trying to get some clarification about what happened to my job. It is disheartening that I have no one to turn to for simple answers about why I was locked out of my place of employment and treated like a criminal instead of your employee. If you are saying that I was terminated due to the misinformation about what happened on my last day, then I have to express my great disappointment and ask that I be reinstated immediately. I would never quit without notice and went home ill, which I communicated to my supervisor and his supervisor as well, which is the proper procedure. Leaving because of an illness is not quitting or job abandonment. I am asking again for a detailed status of my employment, and how this decision has been made. If indeed the company has decided to "move on" and "encourages me to do so as well," at this point, I am afraid that I can't even seek other employment without some sort of interference from the station and/or Cumulus.

Everything that is happening is causing me great distress to the point where I am having trouble sleeping. To be betrayed by people who you have worked so hard to please is a heavy burden to carry and your lack of respectful dialogue has made it much more difficult.
Thanks,
Josh Carmona

On Wed, Apr 20, 2016 at 10:45 AM, Tom Dailey <Tom.Dailey@cumulus.com> wrote:

> Josh,
>
> What's the point of all this? Do you want your job back? You made it pretty clear last week that you were not happy here and, frankly, we're not interested in having you back given your recent behavior. We're moving on and would encourage you to do so as well.
>
> Thanks
>
> Tom Dailey
>
> Cumulus Dallas



**PLAINTIFF'S EXHIBIT 2**

**From:** Crisco Kidd [mailto:criscoradio@gmail.com]
**Sent:** Tuesday, April 19, 2016 6:45 PM

**To:** Tom Dailey
**Subject:** Re: Employment Status and Meeting Request – Joshua Carmona

Hello Tom,

Can you please clarify your position with a few things as they were not addressed in my previous emails? Was I denied a sick day after becoming ill or do you deny that I ever told them in the meeting that I had become sick because of their behavior? Are you treating my becoming sick and taking a sick day as job abandonment, even though I was gone for less than 24 hours? Are you denying that I was locked out of my emails and any access to the building after I left after becoming ill? Also, are you denying the fact that I was denied access to retrieve my backpack and scooter? And, who made the decision to bring me a box of personal belongings when all I wanted was those two items (backpack and scooter)? Lastly, what is the official company policy as it relates to job abandonment and how did my leaving due to illness fall within that scope?

Thank you.


**On Tue, Apr 19, 2016 at 8:47 AM, Tom Dailey <Tom.Dailey@cumulus.com> wrote:**

Josh,


I have forwarded your email to Corporate HR so that they can look into your concerns regarding alleged discrimination during your employment. However, just to be clear, the company did not initiate the termination of your employment. You walked out, retrieved all your belongings and did not return to work, nor did you contact us to make clear that you wanted to continue your employment. Given your actions, we considered you as having voluntarily chosen to end your employment. As a result, you have no basis to claim that you were wrongfully terminated.


Corp HR should reach out to you this week regarding your discrimination concerns.


Thanks

Tom Dailey

Business Manager

Cumulus Dallas

**From:** Crisco Kidd [mailto:criscoradio@gmail.com]
**Sent:** Monday, April 18, 2016 5:22 PM
**To:** Tom Dailey
**Subject:** Re: Employment Status and Meeting Request - Joshua Carmona


Thank you for your reply. I find this very interesting for a few reasons.

First, after saying that I've never been so discriminated against or picked on and targeted like I was on Thursday, I told them it made me physically sick. Which it did. And because of the nauseousness that I felt from being sick, and being put in a hostile work environment, I said I was taking a sick day and I left.

Earlier in the day, I was told to remove a water cooler from the studio by the end of the day and since I was not going to work, I removed that cooler immediately, so I wouldn't get written up for not complying with that either. I called Skai, she got me the dolly and we both went to the studio to remove the cooler and the other items Dustin asked to be taken out. After taking it out the building and returning, I noticed my key fob wasn't working to put the dolly back and when I went to the front, the whole office was locked. I was treated like an outsider, criminal and I was receiving texts from fellow Cumulus members asking what is going on and saying I was not allowed in the building. Dan had even mentioned that he was told I threatened Dustin and Jeff. That is absolutely 100% FALSE.

As far as returning to work, Dan did not mention coming back on Friday. He wanted to talk at that moment. I said I don't feel comfortable, that I didn't feel a part of the team, I was embarrassed and I would wait for the police to arrive to retrieve my backpack and razor scooter. When the police arrived, I didn't ask for ALL of my belongings, all I asked for was my backpack and scooter. Dustin and/or whoever else was in the studio, put my things in a box and sent them out to me via the police.

As far as failing to show up for work on Friday, I was told that Vicki was already asked to do Thursday and Friday's shift during the time I was waiting for the police to arrive. the decision for me not to work on Friday was already made by Dustin, not me. And, being that I wasn't allowed in the building and locked out of my email within an hour of everything happening, how was I to believe I was to show up and work?

Again I ask that you fully investigate the discrimination that I was subjected to while employed at the station. It now seems that I was portrayed in a false light simply as a pretext for terminating me based on being a member of a protected class. I will make myself available to give details regarding my treatment so that you can perform a through investigation.

Thank you,

Josh Carmona


On Mon, Apr 18, 2016 at 4:32 PM, Tom Dailey <Tom.Dailey@cumulus.com> wrote:

Josh,

As you know, you abruptly walked out of a disciplinary meeting on Thursday and did not perform your air shift, you told Dan that would not return on Friday to talk things through, you retrieved all of your belongings from the station, and then you failed to show up to work on Friday or contact us.  Based on

your actions, we concluded that you were not coming back, so your employment was terminated on Friday.

Thanks,

Tom Dailey

Business Manager

Cumulus Media Dallas


**From:** Crisco Kidd [mailto:criscoradio@gmail.com]
**Sent:** Monday, April 18, 2016 3:06 PM
**To:** Tom Dailey
**Subject:** Employment Status and Meeting Request


Good afternoon Tom,

I haven't heard from any one since our meeting Thursday, therefore, I am writing to request an employment status update. I have received multiple texts from people inside the Cumulus building insinuating that I have been let go. The building lock-out and internal chatter may have lead to this assumption. In the event I am still employed, I would like to meet and go over our options in this situation. I would normally have written this from my work email, however, being that I have been locked out of the email server, it wasn't possible. I would also like to discuss the discrimination that I think is prominent in the treatment that I have had to endure while trying to perform my job, with another new format change, since the departure of our former program director Louie Diaz. I am available for the next two weeks for a meeting between 10a and 7p with 24 hours notice. If I do not hear back, I will assume my employment has been terminated and we will move forward from there.

Thank you,

Josh Carmona


--


@CriscoKidd - Twitter | Instagram | Facebook

CriscoKiddBlockParty.com | CRISCOKIDD.com

The NEW HOT93.3 - Weekdays 2-6p

DASH Radio | PowerHits281 | Gecko Bros. Radio | <u>MyDJsRadio</u>
Pitbull's Globalization - SiriusXM

DJcityTV - Host

Young California

#TeamHennessy

Cumulus Media Disclaimer
This message contains confidential information and is intended only for the individual(s) named. If you are not the named addressee you
should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by
mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing
or taking any action in reliance on the contents of this information is strictly prohibited.

--

@CriscoKidd - Twitter | Instagram | Facebook

CriscoKiddBlockParty.com | CRISCOKIDD.com

The NEW HOT93.3 - Weekdays 2-6p

DASH Radio | PowerHits281 | Gecko Bros. Radio | <u>MyDJsRadio</u>
Pitbull's Globalization - SiriusXM

DJcityTV - Host

Young California

#TeamHennessy

--

@CriscoKidd - Twitter | Instagram | Facebook

CriscoKiddBlockParty.com | CRISCOKIDD.com

The NEW HOT93.3 - Weekdays 2-6p

DASH Radio | PowerHits281 | Gecko Bros. Radio | <u>MyDJsRadio</u>
Pitbull's Globalization - SiriusXM

DJcityTV - Host

Young California

#TeamHennessy

--

@CriscoKidd - Twitter | Instagram | Facebook
CriscoKiddBlockParty.com | CRISCOKIDD.com
The NEW HOT93.3 - Weekdays 2-6p
DASH Radio | PowerHits281 | Gecko Bros. Radio | MyDJsRadio
Pitbull's Globalization - SiriusXM
DJcityTV - Host
Young California
#TeamHennessy

Copyright © 2003-2017. All rights reserved.

## EMPLOYMENT AGREEMENT

This EMPLOYMENT AGREEMENT (the "Agreement") is made and entered into as of the 2nd day of March, 2015 (the "Effective Date"), by and between Cumulus Radio Corp. (the "Company"), and Josh Comana a.k.a. Cisco Kid (the "Employee") (collectively the "Parties" and individually a "Party").

WHEREAS the Company wants to employ Employee, and Employee wants to accept such employment and come work with the Company;

WHEREAS Employee and the Company agree that the approval, acceptance, and goodwill developed by the Company's radio announcers with the Company's listening audience and customers/sponsors is a valuable asset of the Company's business, and essential to the Company's success in its highly competitive market;

WHEREAS Employee will develop such approval, acceptance, and goodwill for the Company and at the Company's expense;

WHEREAS Employee and the Company agree that the Company's confidential business information is also a valuable asset of the Company's business, and essential to the Company's competitive success;

WHEREAS Employee will have access to the Company's confidential business information;

WHEREAS the Company would suffer irreparable harm if Employee were to misuse the approval, acceptance, and goodwill that Employee develops on the Company's behalf, or the confidential information that Employee obtains while in the Company's employ, to compete unfairly against the Company;

WHEREAS Employee will gain relationships with other Company employees and knowledge of the Company's relationships with other employees, which knowledge could be misused to disrupt the Company's operations if Employee were to solicit such other employees for employment by a competitor of the Company; and

WHEREAS the Company has agreed to provide Employee additional consideration for entering into this Agreement, including continued access to the Company's trade secrets and confidential information as it is developed by the Company.

NOW THEREFORE in consideration of the mutual covenants and obligations contained herein, and for other good and valuable consideration, the sufficiency of which the parties hereby acknowledge, Employee and the Company agree as follows:

1. **DEFINITIONS.** For construing this Agreement, including all exhibits and attachments, the following definitions shall apply.

1.1 "Company Business" means the operation, promotion, and marketing of commercial radio stations.



1

1.2 "Business Area" means a 50-mile radius from the Company's radio station KLIF-FM radio transmitter located on Singleton Boulevard in Haltom City, Texas. Employee and the Company agree that Employee has carried out or will carry out the Company Business throughout the Business Area by broadcasting programming and advertising heard throughout the Business Area, by soliciting sponsors/customers from throughout the Business Area, and/or by organizing or conducting promotional events throughout the Business Area.

1.3 "Competing Business" means any person (including Employee) or entity carrying on a business that is the same or essentially the same as the Company Business.

1.4 "Confidential Information" means all information that: (i) the Company tries to keep secret and (ii) has commercial value to the Company or is of such a nature that its unauthorized disclosure would be detrimental to the Company's interest, including, for instance, the Company's information concerning price and discount arrangements with sponsors/customers, information concerning sponsors'/customers' particular needs, preferences, and interests (and how the Company uses such information to maintain a competitive advantage), marketing plans, business strategies, promotion plans, financial information, forecasts, and personnel information. Confidential Information does not include information that (i) is in or enters the public domain other than by breach of this Agreement or (ii) is known or becomes known to Employee from a source other than the Company provided that the source does not make the information known to the Employee in violation of a contractual or other legal duty owed to the Company.

1.5 "Job Duties" means the following: Employee is employed in the position of On-Air Personality for the Company's radio station KLIF-FM (the "Station") and Employee agrees to perform the customary duties of this position, including the following non-exclusive duties, as determined and directed by the Company from time to time: performing on-air shifts on the Station; working on show preparation and production, including preparing and delivering live and recorded commercials, liners, endorsements and other programming requirements; performing other duties as may be required to program, operate and run the station and be adequately prepared for on-air and off-air duties; making appearances at customer-related and charitable events and performing remotes; and engaging in social media activities and other duties related to the Station's website and social media. In addition, Employee shall render all artistic, creative, and professional services for the Company and for the Station, including, without limitation, for the production of programming on behalf of the Company and the Station. Without limiting the generality of the foregoing, Employee shall be reasonably available to attend staff meetings and production conferences and be available for public and private personal appearances, interviews, publicity photographs, and promotional appearances, all as directed by Company management. Employee agrees and acknowledges that the Company retains sole discretion to change the scope and extent of Employee's duties at any time, in writing or otherwise.

## 2. EMPLOYEE'S SERVICES AND DUTIES.

2.1 **Services.** Upon and subject to the terms, conditions and other provisions of this Agreement, the Company shall employ Employee during the Employment Period as an On-Air Personality for the Station, with an on-air shift Monday-Friday 2pm to 6pm with a

2

rotating Saturday shift from 10am to 2pm, or as otherwise determined and directed by the Company. Employee will perform the services and Job Duties at the Company's studios in Dallas, Texas; provided that Employee may perform his on-air shift from a remote location up to two (2) weekdays per month. All costs associated with the remote location will be borne by Employee and Employee acknowledges that his primary responsibility is his Job Duties and responsibilities to the Company under this Agreement. Employee shall commence Employee's services hereunder by reporting to the Operations Manager, the Market Manager, and/or to another person designated by the Company in the Company's sole discretion, and shall faithfully perform the Job Duties identified in Section 1.5 above. In addition, Employee shall perform such reasonable duties and responsibilities related to the Job Duties as may from time to time be duly authorized or directed by the Company. The Company has the right, in its sole discretion, to assign Employee to a designated on-air shift, to change the date, time, and/or duration of such air shift or to assign Employee to perform services pursuant to the Agreement for another Employer-owned radio station. Employee agrees that Employee has been assigned and will carry out these Job Duties on behalf of the Company. Nothing in this Agreement shall be deemed to obligate the Company to use the Employee's services or to broadcast any program upon which the services have been performed. The Company shall have fulfilled its obligation hereunder by payment to the Employee of the Base Salary as required by this Agreement.

        **2.2    Employee Commitments.** Employee agrees to comply with all written policies of the Company throughout the Employment Period. Employee further agrees that neither Employee nor members of Employee's immediate family will accept any money, merchandise, service or other item of value from any other person or company in exchange for the inclusion of any "plugs," endorsement or other matter in any broadcast by a Company station, except with written consent of Company following Employee's full disclosure of the facts. Employee also acknowledges and understands Sections 317 and 508 of the Communications Act and the FCC's Rules governing "payola" and sponsorship identification, and is aware of Employee's own personal responsibilities and criminal liabilities thereunder; and Employee commits to carefully comply with those laws during the life of this Agreement. Employee further agrees that Employee will not retain or acquire any outside economic interest, which in Company's reasonable judgment in any material way could compromise faithful and "best efforts" performance of Employee's duties or influence presentation of any broadcast matter; and that Employee will provide written disclosure of any economic interests to the Company that might be considered as having such an effect.

        **2.3    Sole Employment.** During the Employment Period, Employee shall devote Employee's full business time, energy, ability, attention and skill to Employee's employment hereunder. Employee agrees that, during the Employment Period, Employee will not provide services as an employee, consultant, independent contractor or otherwise to any individual or entity without the written consent of the Company. Notwithstanding the foregoing, the Company agrees that Employee may provide services to third parties involved in non-radio endeavors, provided that Employee gives the Company advance notice of such activities and that such activities do not compromise or interfere with the performance of Employee's Job Duties and responsibilities hereunder.

        Employee acknowledges that the Company operates a website on which it streams the broadcasts of the Station as well as video and other Station-related content, and Employee is not

3

entitled to any additional compensation as a result. Employee agrees not to own, operate, or maintain, either directly or indirectly, any website that (i) distributes or re-creates any content (including pictures or narrative) that has been on the Station's website; (ii) distributes or re-creates any content of the Station's on-air broadcasts; or (iii) advertises the goods or services of any of the Station's past or present clients or any client that might reasonably be considered a potential client of the Station.

3.   **TERM.** The term of Employee's employment by the Company under this Agreement (the "Employment Period") shall commence on March 2, 2015 and shall continue until February 28, 2017, and shall be automatically extended from year to year unless either the Company or Employee gives written notice of non-renewal on or before December 1, 2016 (but not before November 1, 2016), or annually on or before December 1st thereafter (but no earlier than November 1st) that the Employment Period shall not be extended. The term "Employment Period" shall refer to the Employment Period if and as so extended.

***Exclusive Negotiations and Right to Match.*** Five percent (5%) of the Base Salary received under this Agreement is provided to Employee in exchange for Employee agreeing to be bound by Sections 3.1, 3.2, 3.3, 6, 7, 8 and 9 set forth below. Employee acknowledges that such five percent (5%) of Employee's Base Salary is valuable and sufficient consideration to Employee in exchange for Employee agreeing to be bound by Sections 3.1, 3.2, 3.3, 6, 7, 8 and 9 hereof.

3.1   During the Employment Period, Employee will not negotiate, allow any person or entity to negotiate on Employee's behalf, or enter into any oral or written agreement for Employee's services, give or accept an option for Employee's service, enter into employment of, perform services for, or grant or receive future rights of any kind to provide Employee's services to or from any person or entity whatsoever including without limitation services to be performed after the Employment Period except as provided for below.

3.2   Employee agrees that commencing at least 6 months prior to termination of the Employment Period (or any renewal thereof), Employee will engage in exclusive good faith negotiations with Company for the continued employment of Employee on mutually agreeable terms. Said negotiations will be exclusive as to the Company and Employee until 30 days prior to the termination of the Employment Period. Thirty (30) days prior to the termination of the Employment Period, Employee shall be free to negotiate with entities other than Company for employment after the Employment Period has ended and upon expiration of the non-compete (Section 7).

3.3   During the last thirty (30) days of the Employment Period and for a period of six (6) months after the termination of the Employment Period, Employee shall not enter into the employment of, perform services for, enter into any oral or written agreement for services, or give or accept an option for services or grant or receive future rights of any kind to provide services to or from any person or entity engaged in a Competing Business, unless and until Employee has first promptly disclosed the terms thereof to Company and offered in writing to enter into an employment agreement with the Company on terms which are substantially similar to those of any bona fide offer which Employee has received or option or rights which Employee intends to grant or accept. Company shall have 15 business days after actual receipt of such notice in which to notify Employee of its acceptance or rejection of such offer. If Company so

4

notifies Employee that Company accepts such offer, the parties hereto shall be bound to enter into an agreement on substantially similar terms and conditions. In the event that there are aspects of the third party offer or option that include the provision of services in addition to the Job Duties as detailed in Section 1.5 above, the offer shall be apportioned by you and the offeror to identify an offer only for the Job Duties and the monetary terms associated therewith. It is that apportioned offer that will be presented to us and will be the offer or option we will have the right to grant or accept. For purposes of this Section, "substantially similar terms and conditions" shall include only duration of employment and terms that provide financial compensation (i.e. salary, bonuses, benefits and other economic incentives reducible to cash or cash equivalents) and shall not include the type or format of the station or the program, whether it is produced and/or broadcast by a network or a local station, whether broadcast on AM or FM, or via broadcasting services.

4.    **COMPENSATION AND OTHER BENEFITS.**  Employee acknowledges and agrees that Employee's right to compensation under this Agreement terminates at the end of the Employment Period, except as provided otherwise in this Agreement. As compensation in full for the services to be rendered by Employee hereunder, the Company shall pay to Employee the following compensation:

4.1    **Salary.**  During the Employment Period, the Company shall pay to Employee the amount of $60,000.00 per annum, less all legally required and previously authorized deductions, payable semi-monthly or on such other payment schedule as shall be applied to all similarly situated employees, for work performed during the regular preceding pay period ("Base Salary"). Commencing March 1, 2016, Employee is eligible for an increase in the Base Salary based on an increase in the Station's ratings performance over the four-month period from September 2015 through December 2015 ("Performance Period") in the target demographic of Adults 18-34, Monday-Friday, 2pm to 6pm. Specifically, if the Station achieves one of the ranks below, Employee's gross Base Salary will increased as set forth below:

| Rank | New Base Salary |
|------|-----------------|
| #1   | $70,000         |
| #2   | $67,000         |
| #3   | $65,000         |

If the Station fails to achieve at least a #3 Rank during the Performance Period, Employee's Base Salary will remain at $60,000.

4.2    **Ratings Bonus.**  During the Employment Period, Employee will receive bonus compensation subject to the conditions set forth in Appendix A to this Agreement.

4.3    **Vacation.**  As provided by the Company's policies, Employee shall be entitled to paid vacation, in the same amount as other similarly situated employees, during each full calendar year of Employee's employment hereunder, which shall accrue monthly on a pro rata basis. At year-end, any accrued but unused vacation may not be rolled into the next calendar year and will be forfeited, unless otherwise required by law.

**4.4     Live Reads and Client-Paid Appearances.** During the Employment Period, the Company will pay to Employee (i) $300 per live reads performed by Employee, and (ii) $125 for every two-hour client-paid appearance fully performed by Employee.

**4.5     Voice-Tracking.** Employee will be paid $500 per month per station, less all legally required and previously authorized deductions, for any voice-tracking services that Employee provides to other Company-owned or affiliated radio stations.

**4.6     Parking.** The Company, at its expense, shall make parking available to Employee at or near the Station.

**4.7     Benefits.** Employee shall be entitled to participate in the benefit plans and programs generally available to its other similarly situated employees, provided that Employee meets all eligibility requirements under those plans and programs. Employee shall be subject to the terms and conditions of the plans and programs, including, without limitation, the Company's right to amend or terminate the plans at any time and without advance notice to the participants.

**4.8     Business Expenses.** The Company shall reimburse Employee for ordinary, necessary and reasonable expenses incurred in the course of performing Employee's duties and obligations with respect to the business of the Company, including expenses for pre-authorized entertainment and travel. The Company shall promptly reimburse Employee for all such expenses paid by Employee on behalf of the Company upon the presentation by Employee of an itemized request for reimbursement of expenditures on Company-approved forms and supported by documentation.

**4.9     Moving Expenses.** The Company will pay up to $2,000 in moving expenses for Employee to relocate to the Dallas, TX area. Payment of moving expenses is contingent upon Employee presenting documentation that the Company deems adequate in its sole discretion, including Employee's obtaining of competitive quotes, from which the Company may choose in its sole discretion. Payment of moving expenses to Employee directly through payroll will result in applicable payroll taxes being withheld. Employee acknowledges that, if Employee is terminated for any of the reasons set forth in the sentence beginning "Notwithstanding" in Section 5.2, or voluntarily resigns from the Company prior to the end of the first year of the Employment Period, the Company will suffer an unfair detriment with respect to the moving costs incurred. Employee agrees to execute the Promissory Note attached to this Agreement as Appendix B, which provides for the reimbursement or partial reimbursement, as applicable, of the costs incurred by the Company.

**4.10     Temporary Housing.** The Company will make temporary housing available to Employee for a period of up to three (3) weeks from the Effective Date hereof.

**5.     TERMINATION.**

**5.1     Death or Disability.** Upon the death of Employee, this Agreement shall automatically terminate and all rights of Employee and Employee's heirs, executors and administrators to compensation and other benefits under this Agreement shall cease.

6

The Company may, at its option, terminate this Agreement upon written notice to Employee if Employee, because of physical or mental incapacity or disability, fails to perform the essential functions of Employee's position hereunder for a continuous period of 90 days or any 120 days within any twelve-month period. In the event of any dispute regarding the existence of Employee's incapacity hereunder, the matter shall be resolved by the determination of a physician to be selected by the Company. Employee agrees to submit to appropriate medical examinations for purposes of such determination.

If Employee is terminated by reason of Employee's death or disability, Employee shall be entitled to receive any Base Salary to which Employee is entitled for work performed through the Date of Termination and not previously paid to Employee. Aside from the provisions of this section, the Company shall have no further obligations to Employee after termination.

**5.2   The Company's Right to Terminate.**  The Company may terminate this Agreement at any time upon twelve (12) weeks' notice to Employee. The Company may elect to pay employee for the notice period in lieu of permitting Employee to continue working, subject to Employee's execution of a general release in favor of the Company. Notwithstanding this provision, the Company may at any time terminate Employee immediately without notice or pay in lieu of notice for: (i) deceit, dishonesty or wrongful appropriation for personal use or benefit of Company property or money; (ii) continued disregard of directions by senior management of the Company after notice or Employee's insubordination to Employee's supervisors; (iii) continued violations of Company policies or procedures after notice, a material violation of Company policies or procedures, or Employee's refusal, after notice, to comply with the Company's standards of good taste; (iv) excessive unexcused absences from work; (v) breach by Employee of this Agreement; (vi) continued inattention to or sub-performance of Employee's duties or obligations as defined in this Agreement after written notice; (vii) assault or battery; (viii) conduct involving moral turpitude, including an arrest or conviction of Employee or a no-contest plea by Employee for a crime of moral turpitude or a felony, or Employee's guilty plea to a lesser-included offense or crime in exchange for withdrawal of a felony indictment, felony charge by information, or a charged crime involving moral turpitude, whether the charge arises under the laws of the United States or any other state within the United States, or any crime that reflects adversely upon Employee or Employee's character; (ix) any action or conduct by Employee that causes public discredit to Employee or to the Company or may be reasonably likely to jeopardize a FCC license of any broadcast station owned by the Company; and/or (x) violation of any FCC rule or regulation, or any state or federal law. Aside from the provisions in this section, the Company shall have no further obligations to Employee after termination.

**5.3   Employee's Right to Terminate for Breach.**  In the event that Employee seeks to terminate this Agreement alleging breach of this Agreement by the Company, Employee may not terminate this Agreement due to Company's breach unless written notice of such breach is given by Employee to the Company, and Company fails to cure such breach within thirty (30) days of receipt of such written notice from Employee.

**5.4   Payments and Return of Property Upon Termination:**  In the event that employment terminates for any reason, Employee shall promptly return to the Company within three (3) business days of termination all property of the Company or Station then in Employee's custody, possession or control.  Upon termination of Employee's employment for any reason.

the Company shall pay Employee any and all unpaid salary and accrued but unused vacation owed to Employee through the date of termination with the Company on the next regularly scheduled payroll. Employee agrees and consents to the Company deducting from Employee's final paycheck any used but unearned vacation and any receivables or other amounts owed by Employee to the Company (such as, amounts owed for personal use of company mail service, cell phones and/or car, reimbursement of moving expenses, etc.) and the approximate current market value of any Company property still in the possession of the Employee that has not been returned to the Company.

6.      **PROTECTION OF CONFIDENTIAL INFORMATION.**

6.1      Employee agrees that all Confidential Information is confidential to and the exclusive property of the Company. Upon request by the Company, and in any event upon termination of Employee's employment with the Company for any reason, Employee shall promptly deliver to the Company all property belonging to the Company, including all Confidential Information then in Employee's possession, custody, or control.

6.2      During Employee's employment by the Company, and for 12 months after termination of such employment, Employee shall not, directly or indirectly, within the United States disclose any Confidential Information to any person or entity, or use or allow others to use through Employee any Confidential Information, except as necessary for performance of Employee's Job Duties.

7.      **AGREEMENT NOT TO COMPETE.**  While employed by the Company, and for six (6) months following termination of such employment, Employee shall not, directly or indirectly, engage in any activities the same or essentially the same as Employee's Job Duties for any Competing Business located or selling advertising within, or broadcasting to, the Business Area. Employee acknowledges that in the event Employee's employment terminates for any reason, Employee will be able to earn a livelihood without violating the foregoing restrictions and that Employee's ability to earn a livelihood without violating such restrictions is a material condition to employment with the Company. Employee further agrees that during the pendency of any litigation to enforce this Section 7, including all appeals, the non-compete period identified herein shall automatically be tolled for such period of time until the litigation is fully and finally resolved.

8.      **AGREEMENT NOT TO SOLICIT SPONSORS/CUSTOMERS.**  During Employee's employment by the Company and for twelve (12) months following termination of such employment, Employee shall not, directly or indirectly, for any Competing Business, solicit, for the purpose of selling advertising time, any sponsor/ customer of the Company with which Employee had Contact during the twelve (12) months preceding the termination of Employee's employment. For purposes of this Section 8, "Contact" means any interaction between Employee and a sponsor/customer which took place in an effort to establish or further the business relationship between the Company and the sponsor/customer. Employee further agrees that during the pendency of any litigation to enforce this Section 8, including all appeals, the non-solicitation period identified herein shall automatically be tolled for such period of time until the litigation is fully and finally resolved.

8

**9.     AGREEMENT NOT TO SOLICIT EMPLOYEES.** During Employee's employment by the Company and for twelve (12) months following termination of such employment, Employee shall not, directly or indirectly, solicit for employment by a Competing Business any of the Company's then-current sales, programming, managerial, or on-air employees with whom Employee dealt while employed. Employee further agrees that during the pendency of any litigation to enforce this Section 9, including all appeals, the non-solicitation period identified herein shall automatically be tolled for such period of time until the litigation is fully and finally resolved.

**10.     NO LIMITATION OF RIGHTS.** Nothing in this Agreement shall limit or prejudice any rights of the Company under Texas law or any other law.

**11.     INJUNCTIVE RELIEF.** Employee agrees that the provisions of Sections 6, 7, 8, and 9 of this Agreement are reasonable and necessary to protect the Company's property and business, and that Employee's breach of any of those provisions may cause the Company to suffer irreparable loss and damage. Accordingly, Employee agrees that if Employee breaches or threatens to breach any of those provisions, the Company shall be entitled to immediate injunctive relief to enforce this Agreement, money damages for whatever harm such breach causes the Company, and whatever other remedies are available.

**12.     EMPLOYEE REPRESENTATIONS AND WARRANTIES.** Employee warrants, represents, and covenants with the Company that the execution, delivery, and performance of this Agreement by Employee does not conflict with, violate any provision of, or constitute a default under any agreement, judgment, award or decree to which Employee is a party or by which Employee is bound including, but not limited to, any implied or express agreement with any of Employee's prior employers. In performing duties for the Company under this Agreement, Employee will not use or disclose any trade secrets that Employee learned from employment with any prior employer, and Employee will not use any files, documents, or other property belonging to a former employer, except as permitted in writing by such prior employer. Before using or disclosing such trade secrets, files, documents or other property, Employee will provide a copy of the written permission to the Company. Employee also represents that this Agreement and all sums payable to Employee hereunder are not and will not be subject to any claim against the Company or Station by any broker, agent, representative or any other person or party, whether or not the Company or Station has actual or constructive knowledge of such claim. Employee shall hold the Company harmless from any and all claims for fees or commissions by any agent or representative of Employee.

**13.     MOTOR VEHICLES.** As a condition of employment by the Company, Employee will be subject to a background check of Employee's driving record through the appropriate Department of Motor Vehicles, and such background check must be satisfactory to the Company in its sole and complete discretion. Continued employment under this Agreement will be subject to Employee's maintaining a satisfactory driving record, and the Company may conduct further checks on driving records during the term of this Agreement. Employee agrees to review the Company's automobile policy, attached as Appendix C and comply with all of its provisions. Violation of the automobile policy may result in termination.

9

14.    **ADVERTISING AND PUBLICITY.** Employee grants the Company the right to record and use Employee's name, voice, likeness, and biographical material for the purpose of advertising, promoting and publicizing the Company as well as its stations and services, and the products and services of advertisers. Employee agrees that Employee shall not use or authorize the use of Employee's name, professional name, nickname, recorded voice, biographical material, performances, portrait, picture or likeness to advertise, promote, or publicize in any manner, any institution, product, or service for any person or entity other than the Company or its affiliated entities without obtaining the prior express written consent of the Company. Employee shall not authorize or release any advertising or promotional matter or any other publicity in any form with reference to Employee's services hereunder or the Company's or Station's programs without the Company's prior express written approval.

15.    **PROPERTY RIGHTS.**

15.1    With respect to each and every program, announcement, event and promotion in connection with which Employee renders services hereunder, the titles and content thereof (including every format, idea, theme, script, characteristic, element thereof), and with respect to all materials created or developed by Employee pursuant to this Agreement (whether by Employee acting alone or in conjunction with other persons) (collectively "Material"), Employee agrees and acknowledges that the Company, its successors and assigns are the sole and exclusive owner of such Material, that all rights, title, and interest in such Material are vested in the Company for all uses and purposes throughout the world. Employee shall claim no right, title, interest, powers, privilege, control or property of any kind whatsoever to or in such Material. Employee represents and warrants that all creations, literary, musical and artistic materials and intellectual properties furnished by Employee hereunder shall be Employee's own original creation except for materials in the public domain or materials that Employee is fully licensed to use, and that all materials furnished by Employee and the use thereof by the Company, Station or its designees will not infringe upon or violate any rights of any kind whatsoever of any individual or entity. At no time during the Employment Period or thereafter shall Employee, directly or indirectly, render any service on or in connection with any radio program that is identified by any name or title confusingly similar to the name or title of a program on or in connection with which Employee has rendered services for the Company or Station. Notwithstanding the foregoing, the Company shall have no control over the use by Employee of Employee's real name or any other intellectual property owned by Employee after termination or expiration of this Agreement. All titles, forms and methods of expression, and material, work and ideas conceived, created or executed by Employee in connection with Employee's services hereunder shall be subject to the foregoing provisions of this Section. Employee shall execute such further and additional instruments as the Company may reasonably require to effectuate the purpose of this Section and to vest in the Company all such property and ownership rights in and to the Material.

15.2    It is understood and agreed that in the exercise of the rights granted to the Company hereunder, the Company or its designees may, at their election, at any time and from time to time, exploit any and all rights granted to the Company hereunder, and the programs and recordings thereof produced pursuant hereto, in any manner and by any means, whether now known or hereafter devised, including, but not limited to, by way of radio broadcasting or other medium or format. For the purpose of this Agreement, the terms "recording" and "recordings" as

10

used herein shall mean and include any recording or recordings made (whether before, during or after a broadcast transmission) by tape, wire, film, disc, digital media, or any other similar or dissimilar methods of recording audio portions of programs, whether now known or hereafter developed. All recordings of all programs and all rights therein, as between Employee on the one hand, and the Company on the other, shall be the sole, exclusive and absolute property of the Company for any and all purposes whatsoever.

      **15.3**    Without in any way limiting the Company's rights as expressed elsewhere herein, it is expressly understood that the programs may be broadcast, rebroadcast, syndicated, or streamed over Station, the Internet or other radio stations, whether or not licensed directly or indirectly to the Company or its affiliated entities, as the Company shall from time to time elect and on a sustaining and/or commercially sponsored basis by any method now or hereafter known by such sponsor or sponsors as the Company may select or authorize in the Company's sole discretion and/or on any other financial basis, whether now known or hereafter developed. It is understood and agreed that the rights granted to the Company by this Agreement include the broadest possible right to cut, edit, change, add to, or subtract from the materials created hereunder and the programs that include Employee's services, and to combine one program with another or with other programs, and Employee hereby waives any and all legal or economic rights to object or challenge same. During Employee's employment with the Company and thereafter, the Company shall retain the right to sell, syndicate or license for broadcast, rebroadcast or for exploitation by any other means the programs in which Employee appears or in which Employee's voice, sobriquet, biography, recorded performances, picture, portrait, caricature or likeness is utilized without additional compensation to Employee; provided that the parties agree to enter into good faith negations regarding compensation for any syndication of the program. The terms of this Section 15 shall survive any termination or expiration of this Agreement.

## 16.   INDEMNIFICATION.

      **16.1**    Employee agrees and acknowledges that Employee shall indemnify and hold harmless the Company, its parent and affiliated entities, any stations or systems over which the programs are broadcast and/or distributed, their shareholders, officers, directors, agents, employees, sponsors, successors and assigns from and against any and all claims, debts, damages, demands, obligations, costs and expenses arising out of or resulting from (i) the making or enforcement by the Company of any right, privilege or option hereby granted to it, (ii) any performance or utterance (ad lib or otherwise) by Employee that is broadcast on any station of the Company or made while Employee is performing services for the Company, (iii) any unauthorized act of Employee, (iv) the use of any material furnished by Employee hereunder, (v) any act or omission of Employee prior to the date of this Agreement or (vi) the breach by Employee of any representations, warranties or provisions of this Agreement. The Company shall have the right to assume the defense of and control the disposition of any such claim or litigation, whether by compromise, settlement or other resolution, and Employee shall fully cooperate with requests of the Company to such end. The Company or Station's approval of any material furnished by Employee shall not constitute a waiver of Employee's indemnity with respect thereto. Employee shall notify the Company promptly of any litigation or claim to which any indemnity hereunder may apply. The expiration or termination of this Agreement shall not affect the continuing obligations of Employee as indemnitor.

16.2    The Company will at all times indemnify and hold harmless Employee from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable counsel fees, arising out of (i) the use of any materials or services furnished by the Company in connection with the production, rehearsal or broadcast of any of the programs or (ii) the breach by the Company of any representations, warranties or provisions of this Agreement; provided, however, that Employee shall promptly notify the Company of any claim or litigation to which the indemnity set forth in this sentence applies; and provided further, that at the Company's option, the Company may assume the defense of any such claim or litigation, to which the indemnity set forth in this sentence applies, and Employee shall fully cooperate with requests of the Company to such end, in which event the Company's obligations with respect thereto shall be limited to the payment of any judgment or settlement approved by the Company in connection therewith.  The expiration or termination of this Agreement shall not affect the continuing obligations of the Company as indemnitor.

17.    **PARTIES IN INTEREST; ASSIGNMENT.**  The Company may assign this Agreement or any interest therein, by operation of law or otherwise, to: (i) its parent company or any affiliate or subsidiary of Affiliate or its parent company, or (ii) any entity that acquires (A) all or substantially all of the assets the Company or any station for which Employee performs services, or (B) the intellectual property/format of any station for which Employee performs services, each by reason of a merger, acquisition, swap, transfer or other business reorganization. Except as stated herein, nothing in this Agreement, expressed or implied, is intended to confer on any person other than the parties and their respective successors and permitted assigns any rights or remedies under or by reason of this Agreement.

18.    **NOTICES.**  All notices and other communications required to be given in writing under this Agreement shall be deemed given when delivered personally or by overnight courier to the following address of the other party hereto, or such other address for such party as shall be specified by notice given pursuant this Section:

| | |
|---|---|
| If to the Company: | Cumulus Radio Corp.<br>3090 Olive Street, Suite 400<br>West Victory Plaza<br>Dallas, Texas  75219<br>Attn: Market Manager |
| With a copy to: | Cumulus Media Inc.<br>3280 Peachtree Road, Suite 2300<br>Atlanta, GA 30305<br>Attn: Legal Department |
| If to Employee: | Josh Comona<br>c/o Cumulus Radio Corp.<br>3090 Olive Street, Suite 400<br>West Victory Plaza<br>Dallas, Texas  75219 |

**19.    GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without regard to principles of conflicts of laws.

**20.    SEVERABILITY.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, unenforceable or illegal in any respect under applicable law or rule in any jurisdiction, such invalidity, unenforceability or illegality shall not affect the validity, legality, or enforceability of any other provision of this Agreement, but this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, unenforceable or illegal provision had never been contained herein.

**21.    ATTORNEYS' FEES.** Employee covenants and agrees to pay all costs, expenses and/or charges, including reasonable attorneys' fees, incurred by the Company in enforcing any of the provisions hereof.

**22.    SURVIVABILITY.** Employee acknowledges and agrees that Employee is bound by the provisions set forth Sections 3.3, 6, 7, 8, 9 herein for so long as Employee remains employed by the Company regardless of when this Agreement expires or is terminated. Employee further acknowledges and agrees that, after Employee's employment with the Company is terminated either by Employee or the Company, Employee will remain bound by the provisions set forth Sections 3.3, 6, 7, 8, 9 herein for the specific post-employment periods set forth in those respective provisions and that the termination or expiration of this specific Agreement does not trigger the commencement of the post-employment periods set forth Sections 3.3, 6, 7, 8, 9 herein. Such post-employment periods shall commence at the time that Employee's employment is terminated, not when this Agreement expires or is terminated. Sections 10, 11, 14, 15, 16, 19, 20, 21 and this Section 22 shall also survive the expiration or earlier termination of this Agreement.

**23.    ENTIRE UNDERSTANDING; AMENDMENTS.** This Agreement, as well as any attachments or exhibits, constitutes the entire agreement and understanding between the parties with respect to the employment of Employee by the Company, and supersedes all prior agreements, representations and understandings, both written and oral, between the parties with respect to the subject matter hereof. This Agreement may not be modified or changed except by written instrument signed by both parties.

**24.    FULL UNDERSTANDING.** Employee represents and agrees that Employee fully understands Employee's right to discuss all aspects of this Agreement with Employee's private attorney, and that to the extent, if any, that Employee desired. Employee utilized this right. Employee further represents and agrees that: (i) Employee has carefully read and fully understands all of the provisions of this Agreement; (ii) Employee is competent to execute this Agreement; (iii) Employee's agreement to execute this Agreement has not been obtained by any duress and that Employee freely and voluntarily enters into it; and (iv) Employee has read this document in its entirety and fully understands the meaning, intent and consequences of this document.

COMPANY

EMPLOYEE

Cumulus Radio Corp.

Josh-Comona a.k.a. Cisco-Kid

By: _____

Name: _Pavid J. Bennett_

Title: _Regional VP Dallas - Houston_

_____

14

## APPENDIX A
## BONUS COMPENSATION

In addition to the compensation provided by the Company to Employee pursuant to Section 4 of the Employment Agreement that is attached to this Appendix, effective with the 2015 Winter Quarterly Bonus Period (prorated based on March start date), Employee shall receive from the Company bonus compensation ("Bonus"), in Employee's capacity as an On-Air Personality for radio station KLIF-FM (the "Station") based upon the Nielsen Audio Monthly PPM Reports for the Dallas, TX Metro Survey Area according to the following schedule:

"Quarterly Bonus Period" will be as follows: (i) the Nielsen Audio Monthly Reports for January, February, and March shall be used to calculate the Bonus for the Winter Quarterly Bonus Period; (ii) the Nielsen Audio Monthly Reports for April, May and June shall be used to calculate the Bonus for the Spring Quarterly Bonus Period; (iii) the Nielsen Audio Monthly Reports for July, August, and September shall be used to calculate the Bonus for the Summer Quarterly Bonus Period; and (iv) the Nielsen Audio Monthly Reports for October, November, and December shall be used to calculate the Bonus for the Fall Quarterly Bonus Period. The Nielsen Audio Monthly Reports for any "Holiday" period shall not apply to or affect the calculation of Employee's Bonus hereunder.

"Average Quarterly Ranking" will be determined as follows: (i) the Company shall add the Monthly AQH Share for the Station in Target Demographic for the three (3) consecutive months that comprise the applicable Quarterly Bonus Period to determine the Combined Monthly AQH Share; (ii) the Company shall then divide the Combined Monthly AQH Share by three (3) to achieve the Average Quarterly Share; and (iii) the Company shall use the Average Quarterly Share to determine the Average Quarterly Ranking.

"Target Demographic" shall mean Persons 18-34, Monday-Friday, 2pm to 6pm.

Based upon the foregoing, Employee shall be entitled to Bonus compensation as follows:

| Average Quarterly Rank | Quarterly Bonus |
| --- | --- |
| #1 | $8,000 |
| #2 | $6,000 |
| #3 | $4,000 |
| #4 | $2,000 |
| #5 | $1,500 |

Other than the payments set forth in this Appendix A, the Company shall have no further obligations to Employee for bonus payments. In the event that the Company ceases to use Nielsen Audio, the Company shall have the right, in its sole discretion, to change or terminate the bonus methodology described herein, any and all of which changes shall become effective immediately.

## APPENDIX B
## PROMISSORY NOTE

I acknowledge that I have received or will receive valuable consideration in the form of moving expenses in connection with my employment with Cumulus Radio Corp. in the total amount of costs to the Company of up to $2,000.00 (the amounts of such $2,000.00 reimbursed to me or paid directly to a third party on my behalf being referred to herein as "Costs"). Accordingly, I promise to pay to the order of Cumulus Radio Corp. the principal amounts stated below as a percentage of such Costs, without interest, should I be terminated for any of the reasons set forth in the sentence beginning with "Notwithstanding" in Section 5.2, or if I voluntarily resign from the Company prior to the conclusion of the first year of the anticipated term of the Employment Period as set forth in the Employment Agreement that is attached to this Appendix. The amount to be reimbursed is set by the following schedule:

| | |
|---|---|
| Within 3 months of Effective Date of Employment Agreement | 100% of Costs |
| Between 4 and 6 months from Effective Date of Employment Agreement | 75% of Costs |
| Between 7 and 9 months from Effective Date of Employment Agreement | 50% of Costs |
| Between 10 and 12 months from Effective Date of Employment Agreement | 25% of Costs |

I waive all notices, demands for payment, presentations for payment, protests and notices of protest, as to this Promissory Note. It is understood that any forbearances or extensions under this Promissory Note by the holder shall not waive or affect the obligations hereunder. If default is made in the payment of this Promissory Note when due, then the whole sum will accrue interest at the then maximum legal interest rate and the principal and interest shall immediately become due and payable at the option of the holder of this Promissory Note, without notice.

In the event of commencement of suit to enforce payment on this Promissory Note, I agree to pay such additional sums as attorneys' fees as the Court may judge reasonable.

_____
Witness

_____
Employee Signature

_____
Printed Name       Josh Carman

_____
Date       3/5/15

16

## APPENDIX C
## CUMULUS MEDIA INC. MOTOR VEHICLE POLICY

Cumulus's Motor Vehicle Policy (applicable to Cumulus Media Inc. and its subsidiaries and affiliates, collectively, "Cumulus") addresses various risk management concerns. As both Cumulus and the individual employee can be held legally responsible for accidents which occur on company time, our insurance carrier requires us to have a policy in place that incorporates a review of motor vehicle records, and a procedure for investigating accidents. This Policy applies to new employees, all employees who come to work for Cumulus as part of a station acquisition, and all existing employees. It covers both those drivers who operate a company car as well as those who operate their own car on company business, *i.e.*, sales people. *Only employees who receive express authorization to drive on behalf of Cumulus pursuant to this Policy are authorized to do so.*

### *Driving Eligibility*

In order to be considered for authorization to drive on behalf of Cumulus, new hires must execute the Acknowledgment and Consent to Motor Vehicle Record Check form (see below). For existing employees, a motor vehicle report ("MVR") will be run on an annual basis by the Business Manager.

Several factors will be considered before an employee will be authorized to drive on behalf of Cumulus, such as whether or not the employee's job function requires operating a Cumulus vehicle, the employee's job performance, and the occasional business needs that may necessitate an employee driving a Cumulus vehicle. Additionally, Cumulus will comply with all state and local laws in granting authorization to drive Cumulus vehicles or drive on behalf of Cumulus. Restrictions on driving Cumulus vehicles and/or driving on Cumulus business may apply to employees and interns under the age of 21.

Each matter will be considered on a case-by-case basis, and will consist of a review of the individual's record over the past 36 months. Any individual who wishes to drive for Cumulus must be in possession of a current, valid driver's license. If an employee has allowed his/her license to expire, he/she must renew the license and provide proof of that renewal to the local Business Manager before privileges to drive on Cumulus business will be granted. If an individual is on a restricted license, *i.e.*, a work permit, due to traffic violations, DUI convictions, etc., that person's driving privileges will be reviewed closely.

### *Driver Criteria*

Anyone who has received a citation in one of the following areas within the preceding 36-month period prior to an MVR check will likely be <u>denied driving privileges</u>. Similarly, an employee who receives citations in one or more of these areas during the course of his/her employment will most likely have his/her driving privileges revoked. This applies whether the citations are received during business hours or on personal time:

    (ii)     License suspension;
    (iii)   Driving after revocation or suspension of license;
    (iv)   Knowingly leaving the scene of an accident;
    (v)    Evading a police officer;

(vi)     Driving while intoxicated or impaired (i.e., DWI, DUI, OWI, OUI);
(vii)    Reckless driving or drag racing;
(viii)   Multiple speeding tickets (more than two large tickets for 20 mph or more over the speed limit or more than four moderate tickets for 10 to 19 mph over the speed limit);
(ix)     More than one accident where the employee was at fault;
(x)      Three or more moving violations (e.g., improper lane change, failure to yield, running red lights or stop signs);
(xi)     Independent evidence of violations deemed satisfactory by the Business Manager, Human Resources, and senior management; or,
(xii)    Any combination of the above.

Employees may be placed on 6 months probation as a result of one or more of the following occurrences during the preceding 36-month period. During the probationary period, the Business Manager will run an MVR on these employees on a monthly basis. If a satisfactory driving record is not maintained by the employee during this probation period, driving privileges may be revoked:

(i)      One accident where the employee was at fault;
(ii)     Two moving violations;
(iii)    One moving violation and two non-moving violations (e.g., illegal parking and vehicle defects);
(iv)     Three non-moving violations.

Employees who are authorized to drive on behalf of Cumulus must review the Safety Policy and Accident Procedures outlined below. Cumulus employees will be expected to adhere to these standards. Any questions regarding any part of the Motor Vehicle Policy should be directed to the Business Manager.

### *Safety Policy*

Company Owned Vehicles
Only authorized employees will be allowed to drive Company vehicles. *Employees' children and spouses are not allowed to drive company vehicles.* Only employees who have the appropriate commercial driver's license and who are qualified by the state and federal DOT, as required, will be permitted to operate a commercial van or truck.

Personal Vehicles on Company Business
Employees who drive their personal cars on company business are required to maintain: auto liability insurance; current state vehicle inspections where required; and safe operating conditions. All necessary documentation must be provided to the Business Manager at the time of initial employment with Cumulus as well as on an annual basis during employment.

Corporate non-owned auto insurance coverage only covers liability on the corporation for damage to a third party automobile or personal injury while the automobile is being used by the employee for Company business. Damage to employee-owned personal vehicles, as well as injury to family members, friends, etc. will not be covered by the corporate coverage and is, therefore, the sole responsibility of the employee.

General Safety Rules
Employees must:
1.    Safety belts must be worn at all times while in the vehicle.
2.    Cellular telephone usage must be kept to a <u>minimum</u> while the vehicle is in motion.
3.    Outgoing calls may be placed only when the vehicle is safely parked.

Employees are <u>not</u> permitted to:
1.    Pick up hitchhikers.
2.    Accept payment for carrying passengers or materials.
3.    Use any radar detector, laser detector or similar device.

Company and Personal Property
Employees are responsible for company property such as computers, work papers and equipment that they keep in their vehicles. Cumulus will not reimburse the employee for stolen personal property.

## *Accident Procedures*

**Employees must to take the following actions when there are injuries to persons and/or damage to other vehicles or property. Please keep a copy of these procedures in your vehicle for reference in the event of an accident.**

1.    If possible, move the vehicle to a safe location out of the way of traffic. Call for medical attention if anyone is hurt. Call the police to investigate the cause of the accident.

2.    Secure the names and addresses of driver and occupants of any vehicles involved, their operator's license numbers, insurance company name and policy numbers, as well as the names and addresses of injured persons and witnesses. **Do not discuss fault with, or sign anything for, anyone except Cumulus' Business Manager or the investigating police officer.**

3.    Immediately notify your supervisor. Also contact the Business Manager for instructions on how to report the claim to our insurance company.

4.    Obtain a copy of the police report once it is ready and forward to your Business Manager.

**When there is theft of, or damage to, your personal vehicle only:**

1.    If you did <u>not</u> witness the damage to the vehicle, please notify the local police department immediately.
2.    Notify the Business Manager.
3.    Do not arrange for repairs to the vehicle until you have received authorization from your insurance company.
4.    Send a copy of the police report, along with a memo outlining any additional information, to the Business Manager.

## ACKNOWLEDGEMENT OF POLICY RECEIPT

I hereby acknowledge that I have been given a copy of the Cumulus Motor Vehicle Policy, which includes a safety policy and accident reporting provisions. I have reviewed and understand what my obligations are under the policies and I agree to adhere to the requirements set forth in it.

_____
Witness

_____
Employee Signature

_____
Printed Name

_____
Date

# EXHIBIT A

## ACKNOWLEDGEMENT AND
## CONSENT TO MOTOR VEHICLE RECORD CHECK

Cumulus Media Inc. requires that all employees whose duties require driving a car submit to a check of their driving record to ensure that they hold a valid driver's license and that they do not pose any unnecessary risks in operating a car. Both offers of employment, and continued employment, for those positions that require driving, are contingent upon a satisfactory driving record.

As such, Cumulus intends to obtain a copy of your motor vehicle record. This information will be used only for insurance purposes. The record will be used to evaluate your eligibility for driving in the course of Company business. The Company may seek updated records through the course of employment.

Please sign and date below to acknowledge that you have reviewed this disclosure and consent to allow Cumulus to obtain a copy of your motor vehicle report during the application process, along with subsequent motor vehicle record checks, should you be employed in a position in which driving is required.

Signature of Applicant

Printed Name of Applicant     JOSH CARMONA

License Number     16291395

Date     2/5/15

Date of Birth     4/8/79

License State     TX

21

# EXHBIT 3

# CIVIL PROCESS REQUEST FORM

**FOR EACH PARTY SERVED YOU MUST FURNISH ONE (1) COPY OF THE PLEADING**
**FOR WRITS FURNISH TWO (2) COPIES OF THE PLEADING PER PARTY TO BE SERVED**

CASE NUMBER: ___ _____ **CURRENT COURT:** _____

**TYPE OF INSTRUMENT TO BE SERVED** (See Reverse For Types): **Plaintiff's Original Petition**

**FILE DATE OF MOTION:** <u>10/06/2017</u>
Month/Day/Year

**SERVICE TO BE ISSUED ON** (Please List Exactly As The Name Appears In The Pleading To Be Served):

1. NAME: Cumulus Media, Inc. AKA Cumulus Radio Corp.

   ADDRESS: 3280 Peachtree Road, Suite 2300, Atlanta, GA 30305

   AGENT, (if applicable): Texas Secretary of State's office at P.O. Box 12079, Austin, Texas 78711-2079

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): _____

**SERVICE BY** (check one):
- ☐ **ATTORNEY PICK-UP**          ☐ **CONSTABLE**
- ☐ **CIVIL PROCESS SERVER** – Authorized Person to Pick-up: _____ Phone: _____
- ☐ **MAIL**                      ☒ **CERTIFIED MAIL**
- ☐ **PUBLICATION:**
  - Type of Publication: ☐ **COURTHOUSE DOOR,** or
  - ☐ **NEWSPAPER OF YOUR CHOICE:** _____
- ☐ **OTHER,** *explain* <u>PLEASE SERVE DEFENDANT VIA TEXAS SECRETARY OF STATE CERTIFIED</u>

## MAIL!

1. NAME: Dustin "Kross" Krammerer

   ADDRESS: 3090 Olive Street, Suite 400, Dallas, Texas 75219 or wherever he may be found.

   AGENT, (if applicable): _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED** (see reverse for specific type): _____

**SERVICE BY** (check one):
- ☐ **ATTORNEY PICK-UP**          ☐ **CONSTABLE**
- ☐ **CIVIL PROCESS SERVER** – Authorized Person to Pick-up: _____ Phone: _____
- ☒ **MAIL**                      ☐ **CERTIFIED MAIL**
- ☐ **PUBLICATION:**
  - Type of Publication: ☐ **COURTHOUSE DOOR,** or
  - ☐ **NEWSPAPER OF YOUR CHOICE:** _____
- ☐ **OTHER,** *explain* Please contact Chelsea Peterson at 713.677.0109 when the citation is ready to be picked up.

### ATTENTION: Effective June1, 2010

For all Services Provided by the DISTRCT CLERKS OFFICE requiring our office to MAIL something back to the Requesting Party, we require that the Requesting Party provide a Self-Addressed Stamped Envelope with sufficient postage for mail back. Thanks you,

## ATTORNEY (OR ATTORNEY'S AGENT) REQUESTING SERVICE:

NAME: Kevin Fulton  TEXAS BAR NO./ID NO. 24059787

MAILING ADDRESS: 2855 Mangum Road, Suite 413, Hoston, Texas 77092

PHONE NUMBER: 713.677.0109    FAX NUMBER: 832.201.8847

EMAIL ADDRESS: KFULTON@FULTONLG.COM

Rev. 5/7/10

SERVICE REQUESTS WHICH CANNOT BE PROCESSED BY THIS OFFICE WILL BE HELD FOR 30 DAYS PRIOR TO CANCELLATION. FEES WILL BE REFUNDED ONLY UPON REQUEST, OR AT THE DISPOSITION OF THE CASE. SERVICE REQUESTS MAY BE REINSTATED UPON APPROPRIATE ACTION BY THE PARTIES.

INSTRUMENTS TO BE SERVED:
(Fill In Instrument Sequence Number, i.e. 1st, 2nd, etc.)

____X____  **ORIGINAL PETITION**
_____  AMENDED PETITION
_____  SUPPLEMENTAL PETITION

COUNTERCLAIM
_____  AMENDED COUNTERCLAIM
_____  SUPPLEMENTAL COUNTERCLAIM

CROSS-ACTION:
_____  AMENDED CROSS-ACTION
_____  SUPPLEMENTAL CROSS-ACTION

THIRD-PARTY PETITION:
_____  AMENDED THIRD-PARTY PETITION
_____  SUPPLEMENTAL THIRD-PARTY PETITION

INTERVENTION:
_____  AMENDED INTERVENTION
_____  SUPPLEMENTAL INTERVENTION

INTERPLEADER
_____  AMENDED INTERPLEADER
_____  SUPPLEMENTAL INTERPLEADER

INJUNCTION

MOTION TO MODIFY

SHOW CAUSE ORDER

TEMPORARY RESTRAINING ORDER

BILL OF DISCOVERY:
   ORDER TO: _____
                          (specify)
   MOTION TO: _____
                          (specify)

PROCESS TYPES: .

NON WRIT:
CITATION
ALIAS CITATION
PLURIES CITATION
SECRETARY OF STATE CITATION
COMMISSIONER OF INSURANCE
HIGHWAY COMMISSIONER
CITATION BY PUBLICATION
NOTICE
SHORT FORM NOTICE

PRECEPT (SHOW CAUSE)
RULE 106 SERVICE

SUBPOENA

WRITS:
ATTACHMENT (PROPERTY)
ATACHMENT (WITNESS)
ATTACHMENT (PERSON)

CERTIORARI

EXECUTION
EXECUTION AND ORDER OF SALE

GARNISHMENT BEFORE JUDGMENT
GARNISHMENT AFTER JUDGMENT

HABEAS CORPUS
INJUNCTION
TEMPORARY RESTRAINING ORDER

PROTECTIVE ORDER (FAMILY CODE)
PROTECTIVE ORDER (CIVIL CODE)

POSSESSION (PERSON)
POSSESSION (PROPERTY)

SCIRE FACIAS
SEQUESTRATION
SUPERSEDEAS

## CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____     COURT *(FOR CLERK USE ONLY):* _____

STYLED JOSH CARMONA AKA CRISCO KID V. CUMULUS MEDIA, INC. AKA CUMULUS RADIO CORP. INC. AND DUSTIN "KROSS"
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br><br>Kevin Fulton | Email:<br><br>kfulton@fultonlg.com | Plaintiff(s)/Petitioner(s):<br><br>JOSH CARMONA AKA CRISCO KID | ☐Attorney for Plaintiff/Petitioner<br>☐*Pro Se* Plaintiff/Petitioner<br>☐Title IV-D Agency<br>☐Other: _____ |
| Address:<br><br>2855 Mangum Road, Suite 413 | Telephone:<br><br>713.677.0109 | | Additional Parties in Child Support Case: |
| City/State/Zip:<br><br>Houston, Texas 77092 | Fax:<br><br>832.201.8847 | Defendant(s)/Respondent(s):<br><br>CUMULUS MEDIA, INC AKA | Custodial Parent:<br>_____ |
| Signature: | State Bar No:<br><br>24059787 | CUMULUS RADIO CORP. INC. AND<br><br>DUSTIN "KROSS" KRAMMERER | Non-Custodial Parent:<br>_____<br><br>Presumed Father: |
| | | [Attach additional page as necessary to list all parties] | |

**2. Indicate case type, or identify the most important issue in the case *(select only 1):***

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐Consumer/DTPA<br>☐Debt/Contract<br>☐Fraud/Misrepresentation<br>☐Other Debt/Contract:<br><br>*Foreclosure*<br>☐Home Equity—Expedited<br>☐Other Foreclosure<br>☐Franchise<br>☐Insurance<br>☐Landlord/Tenant<br>☐Non-Competition<br>☐Partnership<br>☐Other Contract: | ☐Assault/Battery<br>☐Construction<br>☐Defamation<br>*Malpractice*<br>☐Accounting<br>☐Legal<br>☐Medical<br>☐Other Professional<br>  Liability:<br><br>☐Motor Vehicle Accident<br>☐Premises<br>*Product Liability*<br>☐Asbestos/Silica<br>☐Other Product Liability<br>  List Product:<br><br>☐Other Injury or Damage: | ☐Eminent Domain/<br>  Condemnation<br>☐Partition<br>☐Quiet Title<br>☐Trespass to Try Title<br>☐Other Property:<br><br><br>**Related to Criminal Matters**<br>☐Expunction<br>☐Judgment Nisi<br>☐Non-Disclosure<br>☐Seizure/Forfeiture<br>☐Writ of Habeas Corpus—<br>  Pre-indictment<br>☐Other: | ☐Annulment<br>☐Declare Marriage Void<br>*Divorce*<br>☑With Children<br>☐No Children<br><br><br><br>**Other Family Law**<br>☐Enforce Foreign<br>  Judgment<br>☐Habeas Corpus<br>☐Name Change<br>☐Protective Order<br>☐Removal of Disabilities<br>  of Minority<br>☐Other: | ☐Enforcement<br>☐Modification—Custody<br>☐Modification—Other<br>**Title IV-D**<br>☐Enforcement/Modification<br>☐Paternity<br>☐Reciprocals (UIFSA)<br>☐Support Order<br><br>**Parent-Child Relationship**<br>☐Adoption/Adoption with<br>  Termination<br>☐Child Protection<br>☐Child Support<br>☐Custody or Visitation<br>☐Gestational Parenting<br>☐Grandparent Access<br>☐Parentage/Paternity<br>☐Termination of Parental<br>  Rights<br>☐Other Parent-Child: |
| **Employment** | | **Other Civil** | | |
| ☑Discrimination<br>☑Retaliation<br>☑Termination<br>☐Workers' Compensation<br>☐Other Employment: | ☐Administrative Appeal<br>☐Antitrust/Unfair<br>  Competition<br>☐Code Violations<br>☐Foreign Judgment<br>☐Intellectual Property | ☐Lawyer Discipline<br>☐Perpetuate Testimony<br>☐Securities/Stock<br>☑Tortious Interference<br>☐Other: | | |

| Tax | Probate & Mental Health | |
|---|---|---|
| ☐Tax Appraisal<br>☐Tax Delinquency<br>☐Other Tax | *Probate/Wills/Intestate Administration*<br>☐Dependent Administration<br>☐Independent Administration<br>☐Other Estate Proceedings | ☐Guardianship—Adult<br>☐Guardianship—Minor<br>☐Mental Health<br>☐Other: |

**3. Indicate procedure or remedy, if applicable *(may select more than 1):***

| | | |
|---|---|---|
| ☐Appeal from Municipal or Justice Court<br>☐Arbitration-related<br>☐Attachment<br>☐Bill of Review<br>☐Certiorari<br>☐Class Action | ☐Declaratory Judgment<br>☐Garnishment<br>☐Interpleader<br>☐License<br>☐Mandamus<br>☐Post-judgment | ☐Prejudgment Remedy<br>☐Protective Order<br>☐Receiver<br>☐Sequestration<br>☐Temporary Restraining Order/Injunction<br>☐Turnover |

**4. Indicate damages sought *(do not select if it is a family law case):***
☐Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐Less than $100,000 and non-monetary relief
☐Over $100, 000 but not more than $200,000
☐Over $200,000 but not more than $1,000,000
☑Over $1,000,000

Rev 2/13

# EXHBIT 4

FORM NO. 353-4—CITATION
~~THE STATE OF TEXAS~~

**To:**   **CUMULUS MEDIA, INC.**
BY SERVING THE SECRETARY OF STATE
OFFICE OF THE SECRETARY OF STATE
CITATIONS UNIT - P.O. BOX 12079
AUSTIN, TX, 78711

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with   the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and  petition, a default judgment may be taken against you.
   Your answer should be addressed to the clerk of the **298th District Court**
at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **JOSH CARMONA**

Filed in said Court 6th day of October, 2017 against
**CUMULUS MEDIA INC AKA CUMULUS RADIO CORP INC; DUSTIN "KROSS" KRAMMERER**

For suit, said suit being numbered   **DC-17-13908**   the nature of which demand is as follows:
Suit On **EMPLOYMENT** etc.
as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 16th day of October, 2017**
ATTEST: FELICIA PITRE
Clerk of the District Courts of Dallas, County, Texas

By _____, Deputy
   **BELINDA HERNANDEZ**



---

CERT MAIL  (SOS)

CITATION

No.: DC-17-13908

Josh Carmona
vs.
Dustin "Kross" Krammerer et al

ISSUED
ON THIS THE 16TH DAY OF OCTOBER
2017

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **BELINDA HERNANDEZ**, Deputy

Attorney for : Plaintiff
**KEVIN H FULTON**
THE FULTONLAW GROUP PLLC
2855 MANGUM RD
SUITE 413
HOUSTON TX 77092
713–677–0109



DALLAS COUNTY CONSTABLE
FEES  FEES NOT
PAID      PAID

Cause No. DC-17-13908

Court No: 298th District Court

Style: Josh Carmona
vs.
Dustin "Kross" Krammerer et al

**OFFICER'S RETURN**
**FOR INDIVIDUALS**

Received this Citation the _____ day of _____, 20 ____ at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20 ____, at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

-------000000-------

**OFFICER'S RETURN**
**FOR CORPORATIONS**

Received this Citation the _____ day of _____, 20 ____ at _____ o'clock ____ .M. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20 ____, at _____ o'clock ____ .M. by summoning the within named Corporation, _____ by delivering to _____
President - Vice President - Registered Agent - in person, of the said _____
_____ a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

-------000000-------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:

| | |
|---|---|
| For Serving Citation | $ _____ |
| For Mileage | $ _____ |
| For Notary | $ _____ |
| Total Fees | $ _____ |

Sheriff _____
County of _____
State of _____
By _____

To certify which witness by my hand.

_____

(Must be verified if served outside the State of Texas)
State of _____
County of _____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20 ____, to certify which witness my hand and seal of office.

_____
Seal

State & County of _____

# EXHIBIT 5

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To: Dustin "Kross" Krammerer**
**3090 OLIVE STREET SUITE 400**
**DALLAS TX 75219**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **298th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **Josh Carmona aka Crisco Kid**

Filed in said Court **6th day of October, 2017** against

**Cumulus Media Inc aka Cumulus Radio Corp Inc; Dustin "Kross" Krammerer**

For Suit, said suit being numbered **DC-17-13908**, the nature of which demand is as follows:
Suit on **EMPLOYMENT** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 12th day of October, 2017.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

/s/ Teresa Jones

By _____, Deputy
        TERESA JONES

**Josh Carmona**
vs.
**Dustin "Kross" Krammerer et al**

ISSUED THIS
**12th day of October, 2017**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: TERESA JONES, Deputy

**Attorney for Plaintiff**
KEVIN H FULTON
THE FULTON LAW GROUP PLLC
2855 MANGUM RD
SUITE 413
HOUSTON TX 77092
713-677-0109

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

# OFFICER'S RETURN

Case No. : DC-17-13908

Court No.298th District Court

Style: Josh Carmona

vs.

Dustin "Kross" Krammerer et al

Came to hand on the _____ day of _____, 20 ____ at _____ o'clock _____.M. Executed at _____

within the County of _____ at _____ o'clock _____.M. on the _____ day of _____

20 _____, by delivering to the within named

_____

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:  To certify which witness my hand.

For serving Citation     $ _____         _____

For mileage              $ _____         of _____ County, _____

For Notary               $ _____         By _____ Deputy

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 ____,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County _____

# EXHIBIT 6

**FORM NO. 353-3 - CITATION**

# THE STATE OF TEXAS

To: Dustin "Kross" Krammerer
3090 OLIVE STREET SUITE 400
DALLAS TX 75219

GREETINGS:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. Your answer should be addressed to the clerk of the **298th District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **Josh Carmona aka Crisco Kid**

Filed in said Court **6th day of October, 2017** against

**Cumulus Media Inc aka Cumulus Radio Corp Inc; Dustin "Kross" Krammerer**

For Suit, said suit being numbered **DC-17-13908**, the nature of which demand is as follows:
Suit on **EMPLOYMENT** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 12th day of October, 2017.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By _____, Deputy
/s/ Teresa Jones
TERESA JONES

---

**ESERVE**

Dallas Private Process
www.dallasprivateprocess.com
Ph:(214) 916-6658

**CITATION**

DC-17-13908

**Josh Carmona**
vs.
**Dustin "Kross" Krammerer et al**

ISSUED THIS
**12th day of October, 2017**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: TERESA JONES, Deputy

**Attorney for Plaintiff**
KEVIN H FULTON
THE FULTON LAW GROUP PLLC
2855 MANGUM RD
SUITE 413
HOUSTON TX 77092
713-677-0109

**DALLAS COUNTY
SERVICE FEES
NOT PAID**

# OFFICER'S RETURN

Case No. : DC-17-13908

Court No.298th District Court

Style: Josh Carmona

vs.

Dustin "Kross" Krammerer et al

Came to hand on the ___17___ day of ___OCTOBER___, 20 _17_, at _11:28_ o'clock _A_ .M. Executed at _3090 OLIVE ST., SUITE 400_

within the County of ___DALLAS___ at _2:30_ o'clock _P_ .M. on the _____17_____ day of ___OCTOBER___

20 _17_, by delivering to the within named

___DEFENDANT - DUSTIN "KROSS" KRAMMERER___

each, in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery. The distance actually traveled by me in serving such process was ___4___ miles and my fees are as follows:   To certify which witness my hand.

For serving Citation    $ _75.00_

For mileage    $ _-0-_

For Notary    $ _-0-_

(Must be verified if served outside the State of Texas.)

**MICHAEL D. DUPREE**
**TEXAS PROCESS SERVER**
LIC # SCH10446 EXP 7-31-19
of _____ County

By ___Michael D. Dupree___ Deputy

Signed and sworn to by the said ___Michael D. Dupree___ before me this _17_ day of _October_, 20 _17_,

to certify which witness my hand and seal of office.

GILBERTO CARNALLA
Notary Public, State of Texas
Comm. Expires 07-23-2021
Notary ID 129498382

Notary Public _Dallas_ County _TX_

# EXHIBIT 7

CERT MAIL (SOS)

CITATION

No.: **DC-17-13908**

Josh Carmona
vs.
Dustin "Kross" Krammerer et al

ISSUED
**ON THIS THE 16TH DAY OF OCTOBER, 2017**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **BELINDA HERNANDEZ**, Deputy

Attorney for : Plaintiff
**KEVIN H FULTON**
**THE FULTONLAW GROUP PLLC**
**2855 MANGUM RD**
**SUITE 413**
**HOUSTON TX 77092**
**713-677-0109**



DALLAS COUNTY CONSTABLE
FEES    FEES NOT
PAID    PAID

---

FORM NO. 353-4—CITATION

THE STATE OF TEXAS

To:     CUMULUS MEDIA, INC.
        BY SERVING THE SECRETARY OF STATE
        OFFICE OF THE SECRETARY OF STATE
        CITATIONS UNIT - P.O. BOX 12079
        AUSTIN, TX, 78711

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with   the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and  petition, a default judgment may be taken against you.
Your answer should be addressed to the clerk of the **298th District Court**
at 600 Commerce Street, Dallas, Texas 75202.

Said **PLAINTIFF** being **JOSH CARMONA**

Filed in said Court 6th day of October, 2017 against
**CUMULUS MEDIA INC AKA CUMULUS RADIO CORP INC; DUSTIN "KROSS" KRAMMERER**

For suit, said suit being numbered   **DC-17-13908**   the nature of which demand is as follows:
Suit On  **EMPLOYMENT** etc.
as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned
unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 16th day of October, 2017**
ATTEST: FELICIA PITRE
Clerk of the District Courts of Dallas, County, Texas

By _____ Deputy
    BELINDA HERNANDEZ



FILED
2017 OCT 25  AM 10: 37

Cause No. DC-17-13908

Court No: 298th District Court

Style: Josh Carmona
vs.
Dustin "Kross" Krammerer et al

**OFFICER'S RETURN**
**FOR INDIVIDUALS**

Received this Citation the _____ day of _____, 20____ at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20____, at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

-------000000-------

**OFFICER'S RETURN**
**FOR CORPORATIONS**

Received this Citation the 16th day of October, 20 17 at 3:00 o'clock P.M. Executed at Austin TX, within the County of Texas, State of _____, on the _____ day of _____, 20____, at _____ o'clock.M. by summoning the within named Corporation, by serving the secretary of State by delivering to Cumulus Media, Inc. P.O. Box 12079 Austin TX 78711 President - Vice President - Registered Agent - in person, of the said by US certified mail return receipt received and signed by Illegible signature a true copy of this citation together with the accompanying copy of Plaintiff's original petition, having first indorsed on same the date of delivery.

-------000000-------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:

For Serving Citation $ 76.00
For Mileage $ _____    Sheriff
For Notary $ _____    County of _____
Total Fees $ _____    State of _____
                           By Belinda Kumurot

(Must be verified if served outside the State of Texas)
State of _____
County of _____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20____, to certify which witness my hand and seal of office.

To certify which witness by my hand.

**FELICIA PITRE**
DISTRICT CLERK
S600 COMMERCE STREET
DALLAS, TEXAS 75202-4606

Seal

**UNITED STATES**
**POSTAL SERVICE.**

Date: October 19, 2017

MAIL MAIL:

The following is in response to your October 19, 2017 request for delivery information on your Certified Mail™/RRE item number 92148901066154000113756791.  The delivery record shows that this item was delivered on October 19, 2017 at 9:06 am in AUSTIN, TX  78711. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service

The customer reference information shown below is not validated or endorsed by the United States Postal Service.  It is solely for customer use.

Reference ID: 92148901066154000113756791
DC-17-13908/DPRO/BH
CUMULUS MEDIA, INC.
BY SERVING THE SECRETARY OF STATE
Office Of The Secretary Of State
PO Box 12079
Austin, TX  78711-2079



FELICIA PITRE
DISTRICT CLERK
GEORGE ALLEN SR COURT BLDG
600 COMMERCE ST STE 103
DALLAS, TX  75202-4689

9214 8901 0661 5400 0113 7567 91

**RETURN RECEIPT (ELECTRONIC)**

**DC-17-13908/DPRO/BH**

CUMULUS MEDIA, INC.
BY SERVING THE SECRETARY OF STATE
OFFICE OF THE SECRETARY OF STATE
PO BOX 12079
**AUSTIN, TX  78711-2079**

CUT / FOLD HERE

6"X9" ENVELOPE
CUT / FOLD HERE

CUT / FOLD HERE

IMpbCertified8x5Label v2017.04.26.92